# MAURICE ROSS *v.* COMMISSIONER
# OF CORRECTION
## (SC 20281)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The petitioner, who had been convicted of murder, sought a writ of habeas
corpus, claiming, inter alia, that his trial counsel provided ineffective
assistance by failing to object to certain improper remarks by the prose-
cutor during closing argument. Specifically, the prosecutor stated in her
closing argument that the state's firearms expert, S, had testified that
a purposeful trigger pull was required to fire the petitioner's gun, even
though S did not make that statement and was prevented from answering
the prosecutor's leading question to that effect when the petitioner's
trial counsel successfully objected to it. The habeas court rendered
judgment denying the petition, concluding that the petitioner had failed
to demonstrate that he suffered prejudice. On the granting of certifica-
tion, the petitioner appealed to the Appellate Court, which affirmed the
habeas court's judgment. The Appellate Court concluded that, although
at least one of the prosecutor's remarks during closing argument was
improper, the doctrine of collateral estoppel barred the petitioner from
litigating the issue of prejudice because, in the petitioner's direct appeal
from his conviction, the Appellate Court already had determined, in the
context of resolving his claim of prosecutorial impropriety, that the
same improper remarks did not prejudice him. Thereafter, the petitioner,
on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court incorrectly concluded that the petitioner was collater-
ally estopped from litigating the issue of whether he was prejudiced by
his trial counsel's failure to object to the prosecutor's improper remarks
during closing argument, as the issue in the present case was not identi-
cal to that presented in the petitioner's direct appeal of his conviction:

---

[15] In his reply brief, the defendant concedes that, under the circumstances
presented, an adverse decision on his due process claim also would require
an adverse decision on his eighth amendment claim.

337 Conn. 718 AUGUST, 2021 719

Ross *v.* Commissioner of Correction

the petitioner's claim of prosecutorial impropriety in his direct appeal required the Appellate Court to apply the factors set forth in *State* v. *Williams* (204 Conn. 540), and, consistent with *Williams* and its progeny, the Appellate Court properly considered trial counsel's failure to object as evidence that the petitioner was not prejudiced, and it was this aspect of the *Williams* analysis that made it impossible to conclude that collateral estoppel barred the petitioner from litigating the issue of prejudice in his habeas action; moreover, the application of the doctrine of collateral estoppel would preclude the petitioner from seeking a remedy for conduct that he claims affected not only his criminal trial but also his likelihood of success on appeal, and, thus, the application of that doctrine would be fundamentally unfair and inconsistent with due process and the principles underlying the writ of habeas corpus.

2. The petitioner failed to demonstrate that he was prejudiced by his trial counsel's failure to object to the prosecutor's improper remarks and, therefore, could not prevail on the merits of his ineffective assistance claim: the failure of trial counsel to object to the remarks did not undermine this court's confidence in the verdict, as the impropriety was confined to the prosecutor's closing argument, and the trial court instructed the jury that the arguments of counsel did not constitute evidence; moreover, although the prosecutor mischaracterized S's testimony, S's actual testimony constituted strong evidence that the gun that the defendant used to commit the murder of which he had been convicted did not fire accidentally, as the petitioner had claimed; furthermore, the petitioner's own statements and actions before and after the shooting provided strong evidence that he acted intentionally, including evidence that the petitioner believed that the victim had arranged for two of her male friends to assault him, that he purchased a gun thereafter for the purpose of killing the men, and that he did not call for help after he shot the victim.

Argued June 1, 2020—officially released January 11, 2021*

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to the Appellate Court, *Lavine*, *Elgo* and *Bear*, *Js.*, which affirmed the habeas court's judgment, and the petitioner, on the

* January 11, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Ross *v.* Commissioner of Correction

granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, state's attorney, and *Rebecca Barry*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

KAHN, J. The petitioner, Maurice Ross, appeals[1] from the judgment of the Appellate Court, which affirmed the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the Appellate Court incorrectly concluded that the doctrine of collateral estoppel barred him from litigating the issue of whether he was prejudiced by his trial counsel's failure to object to the improper comments of the prosecutor during closing argument at his criminal trial. The respondent, the Commissioner of Correction, argues that the Appellate Court correctly held that the doctrine precluded the petitioner from litigating the issue of prejudice. In the alternative, the respondent contends that the judgment of the Appellate

[1] This court granted the petitioner's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly determine that the doctrine of collateral of estoppel precluded the petitioner from litigating the issue of whether [criminal trial] counsel's failure to object to the prosecutor's improper comments during the petitioner's criminal trial prejudiced him as part of an ineffective assistance of counsel claim under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), because the Appellate Court had previously held in the petitioner's direct appeal from his criminal conviction that those same improper comments did not deprive him of a fair trial?" And (2) "[i]f the doctrine of collateral estoppel does not preclude the petitioner from litigating the issue of prejudice, can the petitioner prevail under *Strickland* v. *Washington*, supra, 466 U.S. 668?" *Ross* v. *Commissioner of Correction*, 331 Conn. 915, 915–16, 204 A.3d 703 (2019).

337 Conn. 718 AUGUST, 2021 721

Ross *v.* Commissioner of Correction

Court may be affirmed on the basis that the petitioner has failed to demonstrate that he suffered prejudice from his criminal trial counsel's allegedly deficient performance. Although we conclude that the doctrine of collateral estoppel does not apply under the circumstances of the present case, we affirm the judgment of the Appellate Court on the ground that the petitioner has failed to demonstrate prejudice.

The record reveals the following relevant facts and procedural history. Following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a (a). See *State* v. *Ross*, 151 Conn. App. 687, 688, 95 A.3d 1208, cert. denied, 314 Conn. 926, 101 A.3d 271 (2014), and cert. denied, 314 Conn. 926, 101 A.3d 272 (2014). On appeal to the Appellate Court, the petitioner claimed that the prosecutor's improper comments during closing argument violated his constitutional right to a fair trial. Id. Although the Appellate Court concluded that at least one of the prosecutor's comments was improper, it affirmed the judgment of conviction on the basis of its conclusion that the petitioner had not been prejudiced by the improper remarks. Id., 688, 706.

The Appellate Court set forth the following relevant facts that the jury reasonably could have found. "In early February, 2009, the [petitioner] and the victim, Sholanda Joyner, were involved in a romantic relationship. The two had known each other since they were children, and had dated intermittently during the preceding eleven years. The victim's relationship with the [petitioner] was, as the victim's sister described it, 'dysfunctional . . . .'

"Several days before February 5, 2009, the [petitioner] went to the victim's apartment on Woolsey Street in New Haven and encountered two of her male acquaintances. A physical altercation between the two men and the [petitioner] ensued, and the [petitioner] was

Ross *v.* Commissioner of Correction

forcefully ejected from the victim's apartment. Shortly thereafter, the [petitioner] purchased a revolver for the purpose of killing the two men. The [petitioner] returned to the victim's apartment the next morning and encountered the individuals who had assaulted him the previous day. After displaying the revolver, the [petitioner] took their money, cell phones, and some drugs.'' Id., 688–89.

''On February 5, 2009, the victim appeared, crying . . . at her father's doorstep. Approximately two minutes later, the [petitioner] arrived and demanded that the victim leave with him. Over the protests of the victim's stepmother, the [petitioner] grabbed the victim by the arm and pulled her out the door. Later that evening, at the home of the victim's grandmother, the victim was crying and pleading with the [petitioner] to leave her alone. The [petitioner] again commanded the victim to depart with him, and the two left.

''After leaving the house of the victim's grandmother at approximately 11 p.m., the [petitioner] and the victim walked to the victim's apartment. Along the way, the victim stopped and purchased some ecstasy pills and phencyclidine (PCP). The victim and the [petitioner] smoked the PCP while en route to the victim's apartment. After arriving at the victim's home, the [petitioner] and the victim went into the victim's bedroom, and both of them ingested ecstasy. At some point, the [petitioner] retrieved a revolver and asked the victim if she had 'set [him] up . . . .' The [petitioner] then fired one gunshot into her head, intentionally killing her. After moving the victim's body next to the bed, the [petitioner] left the apartment, locking the door behind him, and [traveled] to Waterbury for several days. While in Waterbury, the [petitioner] socialized at a club named 'Club Paradise.'

''The [petitioner] returned to New Haven on February 8, 2009. Two days later, he encountered Terrence Corni-

Ross *v.* Commissioner of Correction

gans outside of a mosque in New Haven. Although the
two men were not acquainted, the [petitioner] con-
fessed to Cornigans that he had killed his girlfriend by
shooting her, and asked for money so that he could
leave the state. Cornigans refused to give the [peti-
tioner] any money, but agreed to drive him home. The
[petitioner] instead directed Cornigans to drive him by
the victim's apartment on Woolsey Street. Shortly there-
after, Cornigans returned the [petitioner] to the mosque.
Later that night, Cornigans reported to the police what
the [petitioner] had told him about killing his girlfriend.
The police went to the victim's apartment and discov-
ered her body. The [petitioner] turned himself in to the
police the following day.'' Id., 689–90.

At his criminal trial, the petitioner admitted that he
had shot the victim but claimed that the gun had fired
accidentally. Id., 690–91. Because the petitioner admit-
ted to the shooting, the key issue at trial was his intent.

In support of its burden to prove that the petitioner
intentionally fired the gun, the state presented the testi-
mony of James Stephenson, a firearms and toolmark
examiner with the state of Connecticut. Stephenson
testified regarding the operation of the petitioner's gun,
a ".32 S&W long caliber Harrington & Richardson
revolver . . . .'' Stephenson had examined the petition-
er's firearm for multiple purposes, including to evaluate
the amount of force required to pull the trigger.[2] Ste-
phenson testified that there are two ways to fire the
petitioner's revolver, single action and double action.
In a single action trigger pull, the hammer is first pulled
back, and then the trigger is pulled. In a double action
trigger pull, the trigger is pulled back all the way without
first cocking the hammer. Stephenson's tests revealed

[2] One of Stephenson's coworkers had performed an initial examination
of the firearm and confirmed that it was functioning properly. Stephenson
cosigned the report on that examination.

Ross *v.* Commissioner of Correction

that between three and one-half to five and one-half pounds of pressure are required to fire the weapon in a single action trigger pull. A double action pull requires seven and one-half pounds of pressure. During the state's direct examination of Stephenson, the following exchange occurred:

"[The Prosecutor]: Talking about the single action again . . . with the hammer pulled back, if an individual was holding the gun, and just waving it around, without more, would that cause the gun to fire a bullet?

"[Stephenson]: It requires a force placed upon that trigger to cause it to fire. If the person doesn't have their finger on the trigger, if the gun is—if you were to hold the gun in a fashion where, as explained in single action, if my hand were back here, and I was just waving it around, it's not going to fire. It requires that pressure placed against that trigger to cause it to fire.

"[The Prosecutor]: Is the pressure pulling it backward purposely?

"[Criminal Trial Counsel]: Objection, Your Honor. Again, to the characterization purposely or not, that's a conclusion that I think ultimately is going to go to this jury. That's not appropriate.

"[The Court]: Are you claiming it?

"[The Prosecutor]: No, I'll withdraw it."

The prosecutor continued to question Stephenson, who testified that, with regard to a double action trigger pull, an individual could not, simply by waving the gun around with nothing more, cause the gun to fire. The prosecutor did not repeat the question that had prompted criminal trial counsel's objection.

During closing argument, the prosecutor summarized Stephenson's testimony as follows: "The evidence shows, James Stephenson, the ballistics expert, he indicated

Ross *v.* Commissioner of Correction

that [he] and other ballistics experts, who check and recheck each other's work, examined this gun, and he stated, based on years of experience, and examining thousands of guns, this gun does not just go off, as the [petitioner] claimed, it requires a *purposeful* trigger pull of between five pounds and seven and a half pounds.'' (Emphasis added.) During her rebuttal argument, the prosecutor again referred to Stephenson's testimony, stating, ''Stephenson, [the] ballistics expert, he told you, ladies and gentlemen of the jury, the gun is safe, don't worry, that this gun does not just go off. It takes a *purposeful* action, a real pull.'' (Emphasis added.) Also in her rebuttal, the prosecutor stated: ''I know a couple of you indicated on voir dire that you shot guns, you are familiar with guns, perhaps many of you are not, however; this is, if you will, the smoking gun. If the injury to her head, the conduct leading up to that night, his conduct after, and all of the information that you have is not enough to prove intent to prove murder, then you will know when he fired this gun because, *as . . . Stephenson eloquently put it*, it takes a *purposeful* pull back, it does not go off. We asked him, if you are shaking the gun around, waving the gun around, even if you have your finger on the trigger, it doesn't go off. No, they tested the gun, there was no malfunction with it. They test fired it at the laboratory. In order for this to discharge a bullet, it takes a *very deliberate, purposeful act*.'' (Emphasis added.)

After his conviction was affirmed on direct appeal, the petitioner instituted the present habeas action, claiming that his criminal trial counsel rendered ineffective assistance by, inter alia, failing to object to the prosecutor's improper remarks during closing argument.[3] The habeas court denied the petition. The court

___

[3] The petitioner also claimed, before the habeas court, that his criminal trial counsel rendered ineffective assistance by failing to present expert testimony of a toxicologist in support of a planned intoxication defense. The Appellate Court concluded that the habeas court had properly rejected this claim. See *Ross* v. *Commissioner of Correction*, 188 Conn. App. 251,

Ross *v.* Commissioner of Correction

determined that the petitioner had failed to demonstrate, as required by *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that he had suffered prejudice by his criminal trial counsel's failure to object.

On appeal, the Appellate Court did not address the question of whether the habeas court correctly concluded that the petitioner had failed to demonstrate prejudice. Instead, the court held that the petitioner was collaterally estopped from litigating the issue of prejudice because, in the direct appeal, the Appellate Court had "already determined that the prosecutor's improper comments did not prejudice the petitioner." *Ross* v. *Commissioner of Correction*, 188 Conn. App. 251, 258, 204 A.3d 792 (2019). The Appellate Court observed that, in the direct appeal, in support of his claim of prosecutorial impropriety, the petitioner had relied on the same improper remarks that now formed the basis of his claim of ineffective assistance of counsel. Id. The court reasoned, therefore, that it already had determined in the direct appeal that those remarks "did not deprive the [petitioner] of a fair trial." (Internal quotation marks omitted.) Id. Accordingly, the Appellate Court affirmed the judgment of the habeas court denying the petition. Id., 259. This certified appeal followed.

I

We first address the petitioner's claim that the Appellate Court incorrectly concluded that he was collaterally estopped from litigating the issue of whether his criminal trial counsel's failure to object to the prosecutor's improper remarks prejudiced him. The respondent contends that the respective prejudice prongs of the tests for prosecutorial impropriety and ineffective assistance

255, 204 A.3d 792 (2019). That determination is not before us in this certified appeal.

337 Conn. 718 AUGUST, 2021 727

Ross *v.* Commissioner of Correction

of counsel present identical issues. See *State* v. *Williams*, 204 Conn. 523, 539–40, 529 A.2d 653 (1987); see also *Strickland* v. *Washington*, supra, 466 U.S. 694–95. Specifically, the respondent claims that, because the prejudice prongs of both tests require the petitioner to prove that, but for the predicate conduct, it is probable, or likely, that the result of the proceedings would have been different, they are identical for purposes of the doctrine of collateral estoppel. Therefore, the respondent argues, because the Appellate Court already applied *Williams* in the petitioner's direct appeal to conclude that the prosecutor's improper remarks did not prejudice him, he is collaterally estopped from arguing in the habeas action that, pursuant to *Strickland*, he was prejudiced by his criminal trial counsel's failure to object to those remarks.[4] Because we conclude that the issue in the present case is not identical to that presented in the direct appeal, we agree with the petitioner.

"[T]he doctrines of collateral estoppel and res judicata, commonly referred to as issue preclusion and claim preclusion, respectively, have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 532 n.5, 205 A.3d 552 (2019). "For an issue to be subject to collateral estoppel,

---

[4] The respondent concedes that the *claims* presented in the petitioner's direct appeal and in his habeas action are different. In the direct appeal, the petitioner claimed that the prosecutorial improprieties deprived him of his right to due process, whereas, in this habeas action, he argues that his criminal trial counsel's ineffective assistance violated his right to counsel under the sixth and fourteenth amendments to the United States constitution. Thus, claim preclusion could not apply to the petitioner's claim of ineffective assistance of counsel.

Ross *v.* Commissioner of Correction

it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.'' (Emphasis omitted; internal quotation marks omitted.) *State* v. *Charlotte Hungerford Hospital*, 308 Conn. 140, 146, 60 A.3d 946 (2013).

This court has applied the doctrines of collateral estoppel and res judicata in the habeas context. See, e.g., *In re Application for Writ of Habeas Corpus by Ross ex rel. Ross*, 272 Conn. 653, 662, 866 A.2d 542 (2005) (appeal barred by doctrine of collateral estoppel because plaintiffs in error had ''been afforded a full and fair opportunity to litigate the issue of . . . alleged incompetency [of defendant] in prior proceedings''); *McCarthy* v. *Warden*, 213 Conn. 289, 294–96, 567 A.2d 1187 (1989) (doctrine of res judicata precluded relitigation of identical due process claim between identical parties previously adjudicated in federal court), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990). In the criminal context generally, we have observed that ''[w]hether two claims . . . are the same for the purposes of res judicata should . . . be considered in a practical frame and viewed with an eye to all the circumstances of the proceedings.'' (Internal quotation marks omitted.) *McCarthy* v. *Warden*, supra, 295.

In applying the doctrine of res judicata in the habeas context, we have recognized the significance of the unique circumstances raised by collaterally attacking a final judgment. Specifically, we have stated that, ''[a]lthough the doctrine of res judicata in its fullest sense bars claims that could have been raised in a prior proceeding, such an application in the habeas corpus context would be unduly harsh. . . . Unique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Foremost among those considerations is the interest in making certain

337 Conn. 718 AUGUST, 2021 729

Ross *v.* Commissioner of Correction

that no one is deprived of liberty in violation of his or her constitutional rights. . . . With that in mind, we limit the application of the doctrine of res judicata in circumstances such as these to claims that actually have been raised and litigated in an earlier proceeding.'' (Internal quotation marks omitted.) *State* v. *Miranda*, 274 Conn. 727, 773, 878 A.2d 1118 (2005) (*Katz, J.*, dissenting).[5]

The same policy considerations that we have relied on to circumscribe the application of the doctrine of res judicata to habeas proceedings guide us in applying the doctrine of collateral estoppel in this context.[6] That is, the writ of habeas corpus permits a collateral attack on a final judgment in order to provide ''a remedy for a miscarriage of justice or other prejudice. . . . As this court stated in *Bunkley* v. *Commissioner of Correction*,

[5] Outside of the habeas context, res judicata, or claim preclusion, prevents the parties to a prior action, or their privies, from pursuing not only claims that were actually made in the prior action, but also any claims that could have been raised. See, e.g., *Ventres* v. *Goodspeed Airport, LLC*, 301 Conn. 194, 215–16, 21 A.3d 709 (2011) (concluding that res judicata precluded parties to prior action from litigating claim that was not, but could have been, made in prior action).

[6] We are guided by the analysis of the Appellate Court in *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011). In that case, the Appellate Court concluded that the petitioner's claim of ineffective assistance of counsel was not barred by the doctrine of res judicata. Id., 63. In his direct appeal, the petitioner in *Diaz* argued that a comment made by the trial court in its final charge to the jury violated his fourteenth amendment right to due process. Id., 60, 63. The court concluded that the remark, although improper, constituted harmless error. Id., 60. In the petitioner's subsequent habeas action, he claimed that his criminal trial counsel had rendered ineffective assistance by failing to object to the improper remark. Id. The habeas court determined that the doctrine of res judicata barred the petitioner's claim. Id., 61. On appeal, the Appellate Court held that the habeas court had improperly applied the doctrine of res judicata because the two claims—a fourteenth amendment due process claim and an ineffective assistance of counsel claim alleging violations of the sixth and fourteenth amendments to the United States constitution—were not identical. Id., 63. The Appellate Court concluded that the petitioner's ineffective assistance claim was ''a separate claim, thus requiring separate legal analysis.'' Id., 66.

Ross *v.* Commissioner of Correction

222 Conn. 444, 460–61, 610 A.2d 598 (1992) [overruled in part on other grounds by *Small* v. *Commissioner of Correction*, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008)], the principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness.'' (Internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 561, 153 A.3d 1233 (2017). We must therefore carefully balance the interests of finality that drive the doctrine of collateral estoppel against the constitutional rights secured by the writ. Moreover, we consider the question of whether the issues presented in the habeas action and the direct appeal are identical, ''in a practical frame,'' and view it ''with an eye to all the circumstances of the proceedings.'' (Internal quotation marks omitted.) *McCarthy* v. *Warden*, supra, 213 Conn. 295.

Although, when viewed broadly, the question presented by the prejudice prongs of both *Williams* and *Strickland*—whether the petitioner was deprived of his right to a fair trial—suggests that the issues are identical, there is a key distinction between the operation and focus of the two tests, which answer the ultimate question by employing substantially different means, by evaluating the effect of different conduct undertaken by different actors. See *Strickland* v. *Washington*, supra, 466 U.S. 687; *State* v. *Williams*, supra, 204 Conn. 539. *Williams* evaluates the prejudicial effect of the conduct of the prosecutor; *Strickland*'s focus is on the prejudicial effect of defense counsel's conduct. As a result, the analyses employed by *Williams* and *Strickland* differ. It is undeniable that there is considerable overlap in the evaluation of prejudice for both claims. Understood practically, however, the connection between the issue of prejudice and trial counsel's failure to object differs significantly in the two contexts. In a

Ross *v.* Commissioner of Correction

habeas action, trial counsel's failure to object forms the basis for a petitioner's claim that counsel's performance was deficient. With respect to the prejudice prong of *Strickland*, the question is whether the *effect* of that failure to object prejudiced the petitioner. By contrast, on direct appeal, the same failure to object operates to support the conclusion that the alleged prosecutorial impropriety did not prejudice a defendant.

The petitioner's claim of prosecutorial impropriety in the direct appeal required the Appellate Court to apply what have come to be known as the *Williams* factors. See *State* v. *Williams*, supra, 204 Conn. 540. Specifically, in *Williams*, we explained that, in determining whether a defendant was deprived of his due process right to a fair trial by prosecutorial impropriety, courts should consider: "[1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the [impropriety] to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . and [6] the strength of the state's case." (Citations omitted.) Id. In evaluating the severity of the impropriety, we have accorded significant weight to defense counsel's failure to object, explaining that such a failure is "a strong indicator that [defense] counsel did not perceive [the improprieties] as seriously jeopardizing the defendant's fair trial rights." *State* v. *Jones*, 320 Conn. 22, 38, 128 A.3d 431 (2015); see also *State* v. *Angel T.*, 292 Conn. 262, 289, 973 A.2d 1207 (2009) ("[w]hen considering whether prosecutorial [impropriety] was severe, this court consider[s] it highly significant that defense counsel failed to object to any of the improper remarks, [to] request curative instructions, or [to] move for a mistrial" (internal quotation marks omitted)). Accordingly, "the fact that defense counsel did not object to one or more incidents of [impropriety]

must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted.'' *State* v. *Stevenson*, 269 Conn. 563, 576, 849 A.2d 626 (2004).

Consistent with *Williams* and its progeny, in determining whether the petitioner had been prejudiced by the prosecutor's improper remarks during closing argument, the Appellate Court on direct appeal gave significant weight to criminal trial counsel's failure to object to those remarks at trial. Specifically, in concluding that the improper remarks had not deprived the petitioner of his right to a fair trial, the Appellate Court considered it ''highly significant that [criminal trial] counsel failed to object to any of the improper remarks, [to] request curative instructions, or [to] move for a mistrial. [Criminal trial] counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to seriously jeopardize the [petitioner's] right to a fair trial. . . . Given the [petitioner's] failure to object, only instances of grossly egregious misconduct will be severe enough to mandate reversal.'' (Internal quotation marks omitted.) *State* v. *Ross*, supra, 151 Conn. App. 701. On appeal, accordingly, the Appellate Court properly considered criminal trial counsel's failure to object as evidence that the petitioner was not prejudiced by the prosecutor's improper remarks.

In drawing the inference of lack of prejudice on the basis of criminal trial counsel's failure to object, the Appellate Court, consistent with *Williams* and its progeny, presumed that counsel was competent. The heavy reliance placed on criminal trial counsel's failure to object as evidence of a lack of prejudice in a direct appeal could naturally lead to a claim of ineffective assistance in a subsequent habeas action. It is this aspect of the *Williams* analysis—reliance on counsel's failure to object as evidence of a lack of prejudice—

Ross *v.* Commissioner of Correction

that renders it impossible to conclude that collateral estoppel bars the petitioner from litigating the issue of whether he was prejudiced at trial and on direct appeal by his criminal trial counsel's failure to object to the prosecutor's improper remarks.

As for *Williams*' heavy reliance on trial counsel's failure to object as evidence of a lack of prejudice, in the present case, the application of the doctrine of collateral estoppel would leave the petitioner with no ability to establish how his criminal trial counsel's failure to object affected his trial and his appeal.[7] Put differently, applying the doctrine under these circumstances would effectively preclude him from seeking a remedy for conduct that he claims affected not only his criminal trial but also his likelihood of success on appeal. Applying the doctrine of collateral estoppel to bar the petitioner from litigating whether his criminal trial counsel's failure to object to the improper remarks prejudiced him at trial and on direct appeal would be fundamentally unfair and, therefore, inconsistent with due process and the principles underlying the writ of habeas corpus.

II

We next address the issue of whether the judgment of the Appellate Court may be affirmed on the alternative ground that the petitioner has failed to demonstrate that he suffered prejudice from his criminal trial counsel's failure to object to the improper remarks made by the prosecutor during closing argument. We conclude that the petitioner failed to demonstrate prejudice as required by *Strickland*.

_____

[7] Our ruling is limited to the circumstances presented in this case and does not preclude the application of collateral estoppel in the habeas context. For example, it might be appropriate to apply the doctrine of collateral estoppel to a subsequent habeas claim when the lack of an objection by defense counsel is either not an issue or was not held against a defendant on direct appeal. That question is not before us.

Ross *v.* Commissioner of Correction

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 626–27, 212 A.3d 678 (2019). A reasonable probability is one that is "sufficient to undermine confidence in the verdict that resulted in his appeal." (Internal quotation marks omitted.) *Hickey* v. *Commissioner of Correction*, 329 Conn. 605, 618, 188 A.3d 715 (2018). As we already have noted, a reviewing court may resolve the petitioner's claim on either ground. *Meletrich* v. *Commissioner of Correction*, supra, 627.

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland*, however, is a mixed question of law and fact subject to our plenary review." (Citation omitted; internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 90–91, 52 A.3d 655 (2012). In *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 67, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011), the Appellate Court reflected on the "interplay" between a petitioner's direct appeal and subsequent habeas action, observing that its conclusion in the direct appeal, that

Ross *v.* Commissioner of Correction

the trial court's improper comment had constituted harmless error, "while not dispositive, [was] persuasive."

The petitioner in the present case must demonstrate that there is "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, supra, 466 U.S. 694. Our review of the record persuades us that the petitioner has failed to demonstrate at the habeas court that he was prejudiced by his criminal trial counsel's failure to object to the improper remarks.

We begin with the Appellate Court's decision in the direct appeal, discounting that decision's reliance on criminal trial counsel's failure to object. The Appellate Court agreed with the petitioner that the prosecutor's mischaracterization of the testimony of the state's firearms expert during closing argument was improper. *State* v. *Ross*, supra, 151 Conn. App. 695. Specifically, the prosecutor stated several times in her closing argument that Stephenson had testified that a purposeful pull was required to fire the petitioner's revolver, despite the fact that Stephenson did not make that statement, and, in fact, was prevented from answering the prosecutor's leading question to that effect when criminal trial counsel successfully objected to it. See id., 698. In rejecting the petitioner's claim that he was prejudiced by the improper remarks, the Appellate Court relied on the trial court's general instructions. Id., 702–703. Those instructions advised the jury that arguments made by counsel are not testimony or evidence, and that it must base its verdict solely on the evidence. See id. The Appellate Court acknowledged that the impropriety went to a central issue in the case— the petitioner's mental state—and was not invited by criminal trial counsel. Id., 705. The state's evidence regarding the petitioner's mental state, however, was

Ross *v.* Commissioner of Correction

strong. The Appellate Court summarized the evidence on which it relied in arriving at that conclusion: "[T]he state presented evidence that the [petitioner] and the victim were involved in a tumultuous relationship, that the [petitioner] believed the victim had arranged for two of her male acquaintances to assault him, that he purchased a revolver for the purpose of killing these two men, and that immediately before shooting the victim in the head, he asked her, 'are you trying to set me up?' Moreover, the state presented evidence that the [petitioner] did not summon help for the victim after shooting her, but instead left the apartment, locked the door behind him, and fled to Waterbury, where he socialized at a nightclub with another individual." Id., 704.

In its memorandum of decision denying the petition, the habeas court observed that "[t]he petitioner proffered no evidence at the habeas trial regarding prejudice that differs from that evaluated by the Appellate Court on direct appeal." Our review of the record before the habeas court reveals that, on the issue of the prosecutor's improper remarks, the petitioner presented solely the testimony of his criminal trial counsel, which pertained not to prejudice, but to whether his criminal trial counsel's failure to object, to request a curative instruction or to move for a mistrial constituted deficient performance.[8] On the issue of prejudice, habeas counsel argued to the habeas court that the improper remarks went to the key issue in the case—whether the petitioner intended to pull the trigger.

---

[8] The petitioner's criminal trial counsel testified that it was his practice to object to improper remarks during closing argument only for "egregious" improprieties. For less severe improprieties, he testified, he preferred to avoid "highlighting" any improper remarks. He explained that it was his view that interrupting opposing counsel during closing argument results in "bad vibes" from the jury. He did not offer any strategic reason for failing to object outside of the presence of the jury, to request a curative instruction, or to move for a mistrial.

Ross *v.* Commissioner of Correction

The failure of the petitioner's criminal trial counsel to object to the improper remarks does not undermine our confidence in the verdict. The impropriety was confined to the prosecutor's closing argument, and the court instructed the jury that the arguments of counsel do not constitute evidence. The improper remarks also must be understood in the context of the strength of the state's case. Although the prosecutor incorrectly stated that Stephenson testified that the petitioner's revolver required a ''purposeful'' pull to fire, Stephenson's actual testimony constituted strong evidence that the gun did not fire accidentally, as the petitioner had claimed. Specifically, the prosecutor asked Stephenson, ''if an individual was holding the gun, and just waving it around, without more, would that cause the gun to fire a bullet?'' Stephenson responded: ''It requires a force placed upon that trigger to cause it to fire. If the person doesn't have their finger on the trigger, if the gun is—if you were to hold the gun in a fashion where, as explained in single action, if my hand were back here, and I was just waving it around, it's not going to fire. It requires that pressure placed against that trigger to cause it to fire.''

As the Appellate Court observed, the evidence presented by the state demonstrated that the petitioner believed that the victim had arranged for two of her male friends to assault him, that the petitioner purchased a gun shortly thereafter for the purpose of killing the men, and that, immediately prior to shooting her, the petitioner accused the victim of setting him up. *State* v. *Ross*, supra, 151 Conn. App. 704. Additional evidence presented by the state, on which the jury properly could have relied to conclude that the petitioner intentionally pulled the trigger, revealed that he did not call for help after he shot the victim. Instead, he left her body in her apartment and went to Waterbury, where he went to a club and stayed for several days. Five days

Ross *v.* Commissioner of Correction

after shooting the victim, the petitioner approached a stranger outside of a mosque in New Haven, Cornigans, and told him that he had shot the victim. Specifically, the petitioner told Cornigans that he and the victim were in her apartment. He was on the bed when he heard a knock on the door and saw rays of light. He then walked toward the victim, said, are you trying to "set me up" and shot her in the temple. When he spoke to Cornigans, the petitioner did not state that he accidentally shot the victim when he was waving the gun around. He did, however, ask Cornigans to help him move the body and asked for money so he could leave the state.

The state's evidence that the petitioner intentionally shot the victim was compelling. Although Stephenson's testimony countered the petitioner's claim that he shot the victim accidentally, it was the petitioner's own statements and actions before and after the shooting that provided the strongest evidence that he acted intentionally. He purchased the gun for the purpose of killing two men who he believed assaulted him upon the victim's request. He admitted to Cornigans that he said to the victim, you "set me up," and that he then shot her in the temple. All of his actions, including leaving her body in the apartment, going to parties in Waterbury, and asking Cornigans to help him move the body and to give him money so he could leave the state, provided evidence of consciousness of guilt and defied his claim of an accidental shooting. In light of the strength of the state's case, we conclude that the petitioner has failed to demonstrate a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, supra, 332 Conn. 627.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.